IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

NICOLAS MONTALVAN CEBALLOS,
JOSE SANTOS DELGADO,
JOHN DOE, and all similarly situated
inmates of the Hall County Detention
Center,
     Petitioners,

vs.

GERALD COUCH, in his capacity as
Sheriff of Hall County, and
STEPHANIE WOODARD, in her
capacity as Solicitor of Hall County,
     Respondents.

Civil Action File

No.   2:15CV00247-RWS-JCF

## MOTION TO REMAND

COME NOW the Plaintiffs in the above styled matter, by and through

counsel, and hereby file this their Motion to Remand to the Hall County, Georgia

Superior Court and further show this Court as follows:

1.

On September 22, 2015, the Plaintiffs filed a ***Petition for Writ of Habeas***

***Corpus, Petition for Writ of Habeas Corpus Ad Testificandum, Petition for***

***Declaratory Judgment, and Petition for Writ of Mandamus*** in a single action in

the Superior Court of Hall County, Georgia, to wit: Case No. 2015CV1915B

(hereinafter referred to as the "Petition" or the "Suit"). A copy of this Suit is

attached hereto and incorporated herein as Exhibit A.

2.

This Suit was filed in response to actions by Hall County Solicitor

Stephanie Woodard (hereinafter referred to as "Respondent Solicitor"), to wit:

Respondent Solicitor's effort to exploit the duel detention of the Petitioners by

criminal charge and immigration detainer via reduction of Plaintiffs' criminal

bonds down to ZERO DOLLARS ($0.00, ie. no money required) so as to transfer

the Plaintiffs into the custody of the Immigrations and Customs Enforcement

(ICE) officers who reside at the jail pursuant to the "287g Program."

3.

The Respondent Solicitor revealed its intention to conduct this maneuver on

September 15, 2015 during a hastily scheduled bond hearing in the matter of the

State of Georgia vs. Nicolas Montalvan, before the Honorable Larry A. Baldwin,

State Court of Hall County. Plaintiff Montalvan objected to the lack of advance

notice and the matter was continued to September 22, 2015.

4.

Upon reconvening on September 22, 2015 for the bond reduction hearing,

Plaintiff's counsel presented actual notice to Respondent Solicitor regarding this

Suit. Judge Baldwin again presided over the hearing which was conducted in the

courtroom at the Hall County Detention Center.  At that time, Plaintiff's counsel presented an order from the superior court which prevented the Respondent Solicitor from pursuing the maneuver and the proceedings were adjourned. Plaintiff's counsel has requested a transcript of those proceedings and will file it as an exhibit with this Court upon receipt.

5.

The clearly stated purpose of said bond hearing was that the State was attempting to reduce Mr. Montalvan's bond to $0.00 (no money required) so that he would be transferred into ICE custody on the purported immigration detainer and be deported before any hearing on the merits of the case could be conducted. In fact, the Respondent Solicitor intentional refused to bring an accusation in the matter so as to avoid the matter being placed upon the trial calendar.

6.

The State was represented at said bond hearing by Assistant Solicitor Daniel Sanmiguel, an agent of Respondent Solicitor.  Therefore, Respondent Solicitor received actual notice of the Suit on September 22, 2015.

7.

Moreover, at the conclusion of the hearing, Mr. Sanmiguel, as agent of Respondent Solicitor, requested a photocopy of the Suit to show to Respondent Solicitor.  A copy of the Suit was provided to Mr. Sanmiguel for the State by

electronic mail. A copy of the email is attached hereto and incorporated herein by reference as Exhibit B.

8.

On October 6, 2015, both Respondent Solicitor and Respondent Sheriff were contacted in writing by Petitioner's counsel and again given notice of the Suit. The notice included a copy of the Suit and an explanation as to how the Respondents could avoid unnecessary costs of perfecting service of process. Therefore Respondent Sheriff has received actual notice of the Suit. A copy of the letter is attached hereto and incorporated herein by reference as Exhibit C.

9.

This written notice was also delivered to Respondents' counsel, Mr. William Blalock, attorney for Hall County, Georgia. Mr. Blalock has failed and refused to acknowledge the notice or respond in any way to the letter.

10.

Both Respondents have failed and refused to acknowledge service of process as required by O.C.G.A. §9-11-4(d).

11.

On October 21, 2015, the Hall County District Attorney (who purports to stand in the shoes of the Respondent Solicitor due to the transfer by Respondent Solicitor of the criminal charge against Petitioner Delgado only to be prosecuted

in the District Attorneys office) filed a motion to rescind the superior court order which prevented the Respondent Solicitor from its maneuver to reduce the Petitioners' bonds. A copy of the motion is attached hereto and incorporated herein by reference as Exhibit D.

12.

On October 22, 2015 the motion was scheduled for a hearing and on November 18, 2015, the Hall County Superior Court conducted a hearing on the District Attorney's motion. Present at the hearing was counsel for the Respondents, Mr. Blalock, who refused to come forward and give testimony on the motion, citing some nonspecific privilege. Therefore, Respondents counsel also had actual knowledge of the Suit.

13.

On November 30, 2015, Respondent Sheriff was presented with an additional service copy of the Suit by private process server. Private process was authorized by the Hall County Superior Court, Judge Kathlene F. Gosselin. Respondent Sheriff accepted a service copy of the Suit.

14.

On November 30, 2015 Respondent Solicitor was also presented with an additional service copy of the Suit by private process server. However, Respondent Solicitor refused to accept an additional service copy of the Suit.

15.

On December 1, 2015, Respondent Solicitor was again presented with a service copy of the Suit.  Again, the Respondent Solicitor refused to accept service.

16.

Service of the Suit was again attempted on December 2, 2015.  On this occasion, Respondent Solicitor accepted the service copy.

17.

The Respondents and their counsel have failed and refused to file an Answer to the Suit and are currently in default.

18.

Instead of responding to the Suit on the merits, Respondents have erroneously alleged federal question jurisdiction and sought to remove this action to federal court by filing a notice with this Court on December 11, 2015.

19.

In fact, no federal question subject matter jurisdiction is present.

20.

Regarding federal removal, any such maneuver should be viewed with suspicion and removal statutes are strictly construed. Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999).

21.

Indeed, there is a strong presumption in favor of remand. *Id*.

22.

In light of the foregoing, Plaintiffs show that the Respondents have been on

actual notice of this petition for more than thirty (30) days prior to the filing of

their Notice of Removal to federal court.

23.

Federal law provides that,

"The notice of removal of a civil action or proceeding shall be filed within
**30 days after the receipt by the defendant, through service or otherwise,
of a copy** of the initial pleading setting forth the claim for relief upon which
such action or proceeding is based, or within 30 days after the service of
summons upon the defendant if such initial pleading has then been filed in
court and is not required to be served on the defendant, **whichever period is
shorter.**" (emphasis added)  28 U.S.C. §1446(b)(1)

24.

Therefore, the notice of removal is untimely as a matter of law and should

be rejected.

25.

Petitioners have filed contemporaneously herewith a memorandum of law in

support of this motion to remand a copy of which is incorporated herein by

reference as Exhibit E.  For the reasons stated more fully therein it is just and

proper that this action be remanded to the Superior Court of Hall County, Georgia.

WHEREFORE the Petitioners pray this Court grant this Motion to Remand and reject the Respondents' notice of removal.

This 7th day of January 2016.


___*/s/ Arturo Corso*_____

Arturo Corso
Georgia State Bar No. 188748
Attorney for Petitioners
*The Corso Law Center, LLC*
427 Green Street, N.W.
Gainesville, Georgia  30501
Telephone: (770) 532-9732
Facsimile: (770) 532-9733

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1C, and I have this day electronically filed the preceding Motion to Remand with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorney(s) of record in the case, including opposing counsel. Counsel of Record are:

> Brian R. Dempsey
> Freeman Mathis & Gary, LLP
> 100 Galleria Parkway
> Suite 1600
> Atlanta, GA 30339-5948

Theodore Freeman
Freeman Mathis & Gary
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948

Wesley Calvin Jackson
Freeman Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948

William H. Blalock
Stewart Melvin & Frost
6th Floor Hunt Tower
P.O. Box 3280
200 Main Street
Gainesville, GA 30501


This 7th day of January 2016.


___*/s/ Arturo Corso*__ _____ _____ __
Arturo Corso
Georgia State Bar No. 188748
Attorney at Law

EXHIBIT A

PETITION FOR WRIT OF HABEAS CORPUS

IN THE SUPERIOR COURT OF HALL COUNTY

STATE OF GEORGIA

NICOLAS MONTALVAN CEBALLOS, |
JOSE SANTOS DELGADO,                           |
JOHN DOE, and all similarly situated       |
inmates of the Hall County Detention       |
Center,                                                        |
      Petitioners,                                   |
                       |          Civil Action File
                       |
vs.                                                               |          No. 2015CV1915.B
                       |
GERALD COUCH, in his capacity as          |
Sheriff of Hall County, and                       |
STEPHANIE WOODARD, in her               |
capacity as Solicitor of Hall County,        |
      Respondents.                                   |

**PETITION FOR WRIT OF *HABEAS CORPUS*,**
**PETITION FOR WRIT OF *HABEAS CORPUS AD TESTIFICANDUM*,**
**PETITION FOR DECLARATORY JUDGMENT, AND**
**PETITION FOR WRIT OF MANDAMUS**

COME NOW the Petitioners in the above styled matter, Mr. Nicolas

Montalvan Ceballos, Mr. Jose Santos Delgado, John Doe and all similarly situated

inmates of the Hall County Detention Center, by and through undersigned counsel,

and hereby file this Petition for Writ of *Habeas Corpus*, Petition for Writ of

*Habeas Corpus Ad Testificandum*, Petition for Declaratory Judgment, and Petition

for Writ of Mandamus and further shows this Honorable Court as follows:

1.

Petitioner, Mr. Nicolas Montalvan Ceballos (hereinafter referred to as

"Petitioner Montalvan"), may be identified by his date of birth, to wit: September

10, 1986; and his Hall County Offender No., to wit: 424422.  Petitioner, Mr. Jose

Santos Delgado (hereinafter referred to as "Petitioner Santos"), may be identified

by his date of birth, to wit: August 21, 1988; and his Hall County Offender No., to

wit: 346794.

2.

The Petitioners are being restrained by Gerald Couch (hereinafter referred to

as "Respondent Sheriff") in his capacity as the Sheriff of Hall County, Georgia.

The Petitioners are being further restrained by Stephanie Woodard (hereinafter

referred to as "Respondent Solicitor") in her capacity as Solicitor of Hall County,

Georgia.

3.

The Petitioners are being restrained by virtue of their laboring under

purported misdemeanor criminal charges alleged by Respondent Solicitor and by a

purported immigration hold placed upon them by the Respondent Sheriff.

## FACTS AND PROCEDURAL POSTURE

4.

The pretense of the Petitioner's restraint is as follows: to be provided.

5.

The Petitioners have been given a bail amount but have specifically declined to post that bail amount and choose to remain in jail.

6.

The Petitioners now have a "287G Hold" for immigration. Respondent Solicitor has moved the Court to reduce the bail amounts for these and other Petitioners to $0.00 or to be released on their "own recognizance." However, Respondent Solicitor knows that in so doing the practical effect would be to cause the Petitioners to be removed from the jurisdiction against their will and without any judicial review.

7.

There is no arraignment date or other hearing currently scheduled for the Petitioner. Both Petitioners have entered pleas of not guilty and filed a constitutional and statutory demand for speedy trial.

### THE 287G PROGRAM IS AN UNCONSTITUTIONAL SCHEME

8.

The Petitioners hereby incorporate by reference each of the preceding numbered paragraphs as if restated in full.

9.

The "287G Program" is an obscure provision of federal law that authorizes

specially trained, local law enforcement officers to identify certain criminal aliens and commence deportation proceedings against them as if they were immigration agents.

10.

In Hall County, Georgia, the 287G program has been implemented in the Hall County Detention Center since 2007.

11.

In the earliest days of implementation of the 287G program, roadblocks were routinely set up in the residential and commercial corridors where Latinos live and work. These roadblocks were a ruse to locate and incarcerate Latino immigrants because participating officers would not only ask driver's for the Georgia Driver's Licenses, they would also routinely ask occupants of cars for their proof of lawful presence in the U.S. and refuse to honor the valid Driver's Licenses of other States.

12.

The practical affect of the 287G program is that any person who is not a U.S. Citizen is placed under a detainer that makes it impossible for them to post a bond and get out of jail pending a hearing on the accusation which occasioned their visit to the Hall County Detention Center.

13.

Counsel for the Petitioner is even aware of a U.S. Citizen having a 287G Hold placed upon her while at the Hall County Detention Center simply because she was a Latina of foreign birth. The fact of the matter is that the Hall County Sheriff's Department is unable to fully and fairly determine the nationality of every person who touches the Detention Center because immigration law is a complex matter with a complicated legal history full of amendments, exceptions and nuance.

14.

When the ICE Agents act upon the Respondent's 287G Hold, they act to forcibly remove an accused person from the jurisdiction of the Courts where the criminal complaint is still pending. The complaints are then either placed upon the Dead Docket or listed as being on Bench Warrant status when the accused fails – through no fault of his own – to appear in Court.

15.

In so doing, the Respondent has uncovered a "Dead Zone" in the law. In this Dead Zone, illegal arrests, illegal searches, illegal seizures, and other police misconduct goes unpunished because there is no judicial review of illegal police conduct when the accused has been forcibly removed from the jurisdiction.

16.

Because of the collaboration of the Respondents with these ICE Agents, the accused is deprived on his or her right to defend their own case, in direct violation of the Sixth Amendment of the U.S. Constitution and Article 1, Section 1, Paragraph 12 of the Georgia Constitution.

17.

That is to say, in his application of the 287G Program, the Respondent has engaged in a conspiratorial scheme to deprive accused immigrants of their day in Court.

## NECESSITY OF WRIT OF HABEAS CORPUS *AD TESTIFICANDUM*

18.

While it is true that current case law provides that ordinarily a Petitioner does not have a constitutional right to be present at a hearing in a civil action to which he is a party, nevertheless, this Court may order that the Petitioner be held in local custody pending hearing in this matter because here the Petitioner is also an essential witness to the action.

19.

Pursuant to O.C.G.A. §24-10-62, this Court may issue a Writ of Habeas Corpus *Ad Testificandum* (for purpose of giving testimony) to cause the production of any witness who is imprisoned.

20.

Indeed, the Petitioner will not be able to make a showing in support of his claims without the opportunity to give live testimony to this Court.

21.

There is an especially urgent need for this Court to consider this Petition as soon as possible because the Petitioner is in the process of being deported under the 287G Program because of the very conduct which is the basis for this Complaint. Therefore, the Petitioner further urges this Court to offer a hearing date at the earliest possible date.

22.

In Poole vs. Lambert, 819 F.2d 1025 (11th Cir. 1987) the Court ruled that the decision to issue a writ of habeas corpus *ad testificandum* to permit a prisoner to be present for his own trial is a matter committed to the sound discretion of the district court. See also, Ballard v. Spradley, 557 F.2d 476, 480 (5th Cir. 1977) (citations omitted).

23.

In determining whether to issue such a writ, our precedent counsels that the district court should consider such factors as:

"whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be

stayed until the prisoner is released without prejudice to the cause asserted."
*Id.* (citation omitted).

24.

The <u>Ballard</u> court specifically directed, however, that a district court should

not base its discretion on the probability that a prisoner will succeed on the merits

of his claim, because such a factor focuses on the ultimate result of the action

rather than on the need for the prisoner's testimony vis-a-vis the difficulties

attendant in securing it. *Id.* at 481.

25.

As evidenced by the averments of the Petition, the Petitioner was arrested

for an infraction for which he should have been merely cited.  The Petitioner will

give sworn witness testimony to that effect in connection with this matter.

Therefore, this Court does have the authority to issue a Production Order for the

Petitioner in this matter.

26.

Additionally, pursuant to O.C.G.A.§24-10-60, when a prisoner confined in

any institution is needed as a witness in any civil proceeding, the judge of the

court where the matter is pending shall issue an ex parte order requiring his/her

delivery to the custody of the county sheriff.  The costs shall be bourne by the

party requesting the prisoner and the court may require a deposit to defray the

costs.  However, when the requesting party is financially unable to pay the costs of

transportation, the court shall bear the costs when, after examination, the court

determines that the prisoner's presence is required by the ends of justice.

27.

In <u>Phillips vs. Hopper</u>, 237 Ga. 68 (1976), the Georgia Supreme Court

ruled,

> "where the judge, after examining into the matter, determines that the
> prisoner's presence is required by the ends of justice and . . . the party
> requesting it is financially unable to make said deposit, . . . expenses shall
> be taxed as costs of court." Consequently, when the habeas trial court
> received appellant's application for an order to produce these prisoners as
> witnesses at the habeas hearing, it was necessary for the court to determine
> whether appellant is financially unable to pay the expenses of having these
> prisoners produced as witnesses  and whether the presence of the prisoners
> as witnesses "is required by the ends of justice." Appellant has the burden
> of satisfying the trial court that both of these conditions exist before he can
> secure an order requiring the production of the prisoners as witnesses and
> taxing the expenses thereof as costs of court. See <u>Reed v. State</u>, 119 Ga.
> App. 368 (5) (166 SE2d 900) (1969), and <u>Spurlin v. State</u>, 228 Ga. 2 (2)
> (183 SE2d 765) (1971). The trial judge must exercise a sound judicial
> discretion in determining whether the presence of the witnesses is "required
> by the ends of justice."

Here, the Petitioner, is needed as a witness in the pending Petition for Writ of

Habeas Corpus.  Only the Petitioner can testify about his willingness to agree to

personal recognizance within the meaning of the statute.

28.

Additionally, the Petitioners are indigent and unable to pay the costs of

transportation as an essential witness in this action.  The ends of justice would be well served by permitting his transportation.

29.

There is a strong public policy rationale for the production of a Petitioner Witness for a hearing on a Petition for Writ of Habeas Corpus which involves the Court's opportunity to observe the Petitioner in person and evaluate the meaningfulness and earnestness of his plaintive cry for relief.

30.

This is all the more significant when the action involves a complaint against the validity and voluntariness of his plea of guilty, the merits of which are apparent from the pleadings but the veracity of which cannot be determined without hearing the live testimony of the Petitioner.

31.

A telephonic hearing would fail to preserve the integrity of the proceedings because the Court would not be able to evaluate the Petitioner's non-verbal expressions over the telephone.

## PETITION FOR DECLARATORY JUDGMENT

32.

The Petitioner hereby incorporates each of the preceding numbered paragraphs by reference as if restated in full.

33.

Pursuant to O.C.G.A. §§ 9-4-1 et seq. "[i]n cases of actual controversy, the respective superior courts of this state shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

34.

This matter represents an actual controversy.  In fact, in the last few years there have been as many as five other men wrongfully arrested and deported before any trial could be set on the matter and before any pretrial motions could be filed.  In effect, those men were denied their right to be heard in any Court.

35.

As of this writing, the State Court has scheduled a hearing on the Respondent Solicitor's request for an OR bond at 9am on September 22, 2015.

36.

The Petitioners do not wish to be released on an OR bond only to face the Respondent Sheriff's 287G officers and the commencement of deportation.

37.

There is, therefore, a genuine uncertainty regarding the Petitioner's right to

trial prior to any deportation.

38.

It is essential that this Court declare for the parties the correct status of the law so that each may understand how to proceed as well as so that the offending party may have the opportunity to mitigate the damages being caused here.

## PETITION FOR WRIT OF MANDAMUS

39.

The Respondent Solicitor has evidenced an intention to bring the Petitioner before the State Court of Hall County for release which will defeat judicial review of the merits of the arrest and defeat the demand for trial.

40.

The Petitioners have a right to trial. The Petitioners' rights' are not only Constitutional but also statutory.

41.

Because the Respondents have failed and refused to acknowledge the Constitutional and Statutory rights of the Petitioner, it is necessary for this Court to issue a Writ of Mandamus prohibiting the Respondents from acting to circumvent the right to trial.

WHEREFORE the Petitioner prays this Court grant this Petition for Writ of Habeas Corpus, Petition for Writ of Habeas Corpus *Ad Testificandum*, Petition for Declaratory Judgment, and Petition for Writ of Mandamus, order the Petitioners be immediately released from custody, suspend the 287G program and conduct a hearing on this matter.

This 22nd day of September 2015.

Arturo Corso
Georgia State Bar No. 188748
Attorney for Petitioner
427 GREEN STREET, N.W.
GAINESVILLE, GEORGIA  30501
Telephone: (770) 532-9732
Facsimile: (770) 532-9733

EXHIBIT B

EMAIL TO RESPONDENT SOLICITOR WITH COPY OF SUIT

**Arturo Corso**

| | |
|---|---|
| **From:** | Arturo Corso |
| **Sent:** | Tuesday, September 22, 2015 12:54 PM |
| **To:** | Daniel Sanmiguel (Solicitor's Office) (dsanmiguel@hallcounty.org) |
| **Subject:** | Emailing: 20150922123736249 |
| **Attachments:** | 20150922123736249.pdf |

Your message is ready to be sent with the following file or link attachments:

20150922123736249

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

IN THE SUPERIOR COURT OF HALL COUNTY

STATE OF GEORGIA

NICOLAS MONTALVAN CEBALLOS,
JOSE SANTOS DELGADO,
JOHN DOE, and all similarly situated
inmates of the Hall County Detention
Center,
     Petitioners,

vs.

GERALD COUCH, in his capacity as
Sheriff of Hall County, and
STEPHANIE WOODARD, in her
capacity as Solicitor of Hall County,
     Respondents.

Civil Action File

No. 2015CV1915 B

## PETITION FOR WRIT OF *HABEAS CORPUS*,
## PETITION FOR WRIT OF *HABEAS CORPUS AD TESTIFICANDUM*,
## PETITION FOR DECLARATORY JUDGMENT, AND
## PETITION FOR WRIT OF MANDAMUS

COME NOW the Petitioners in the above styled matter, Mr. Nicolas

Montalvan Ceballos, Mr. Jose Santos Delgado, John Doe and all similarly situated

inmates of the Hall County Detention Center, by and through undersigned counsel,

and hereby file this Petition for Writ of *Habeas Corpus*, Petition for Writ of

*Habeas Corpus Ad Testificandum*, Petition for Declaratory Judgment, and Petition

for Writ of Mandamus and further shows this Honorable Court as follows:

1.

Petitioner, Mr. Nicolas Montalvan Ceballos (hereinafter referred to as "Petitioner Montalvan"), may be identified by his date of birth, to wit: September 10, 1986; and his Hall County Offender No., to wit: 424422. Petitioner, Mr. Jose Santos Delgado (hereinafter referred to as "Petitioner Santos"), may be identified by his date of birth, to wit: August 21, 1988; and his Hall County Offender No., to wit: 346794.

2.

The Petitioners are being restrained by Gerald Couch (hereinafter referred to as "Respondent Sheriff") in his capacity as the Sheriff of Hall County, Georgia. The Petitioners are being further restrained by Stephanie Woodard (hereinafter referred to as "Respondent Solicitor") in her capacity as Solicitor of Hall County, Georgia.

3.

The Petitioners are being restrained by virtue of their laboring under purported misdemeanor criminal charges alleged by Respondent Solicitor and by a purported immigration hold placed upon them by the Respondent Sheriff.

## FACTS AND PROCEDURAL POSTURE

4.

The pretense of the Petitioner's restraint is as follows: to be provided.

5.

The Petitioners have been given a bail amount but have specifically declined to post that bail amount and choose to remain in jail.

6.

The Petitioners now have a "287G Hold" for immigration. Respondent Solicitor has moved the Court to reduce the bail amounts for these and other Petitioners to $0.00 or to be released on their "own recognizance." However, Respondent Solicitor knows that in so doing the practical effect would be to cause the Petitioners to be removed from the jurisdiction against their will and without any judicial review.

7.

There is no arraignment date or other hearing currently scheduled for the Petitioner. Both Petitioners have entered pleas of not guilty and filed a constitutional and statutory demand for speedy trial.

## THE 287G PROGRAM IS AN UNCONSTITUTIONAL SCHEME

8.

The Petitioners hereby incorporate by reference each of the preceding numbered paragraphs as if restated in full.

9.

The "287G Program" is an obscure provision of federal law that authorizes

specially trained, local law enforcement officers to identify certain criminal aliens and commence deportation proceedings against them as if they were immigration agents.

10.

In Hall County, Georgia, the 287G program has been implemented in the Hall County Detention Center since 2007.

11.

In the earliest days of implementation of the 287G program, roadblocks were routinely set up in the residential and commercial corridors where Latinos live and work.  These roadblocks were a ruse to locate and incarcerate Latino immigrants because participating officers would not only ask driver's for the Georgia Driver's Licenses, they would also routinely ask occupants of cars for their proof of lawful presence in the U.S. and refuse to honor the valid Driver's Licenses of other States.

12.

The practical affect of the 287G program is that any person who is not a U.S. Citizen is placed under a detainer that makes it impossible for them to post a bond and get out of jail pending a hearing on the accusation which occasioned their visit to the Hall County Detention Center.

13.

Counsel for the Petitioner is even aware of a U.S. Citizen having a 287G Hold placed upon her while at the Hall County Detention Center simply because she was a Latina of foreign birth. The fact of the matter is that the Hall County Sheriff's Department is unable to fully and fairly determine the nationality of every person who touches the Detention Center because immigration law is a complex matter with a complicated legal history full of amendments, exceptions and nuance.

14.

When the ICE Agents act upon the Respondent's 287G Hold, they act to forcibly remove an accused person from the jurisdiction of the Courts where the criminal complaint is still pending. The complaints are then either placed upon the Dead Docket or listed as being on Bench Warrant status when the accused fails – through no fault of his own – to appear in Court.

15.

In so doing, the Respondent has uncovered a "Dead Zone" in the law. In this Dead Zone, illegal arrests, illegal searches, illegal seizures, and other police misconduct goes unpunished because there is no judicial review of illegal police conduct when the accused has been forcibly removed from the jurisdiction.

16.

Because of the collaboration of the Respondents with these ICE Agents, the accused is deprived on his or her right to defend their own case, in direct violation of the Sixth Amendment of the U.S. Constitution and Article 1, Section 1, Paragraph 12 of the Georgia Constitution.

17.

That is to say, in his application of the 287G Program, the Respondent has engaged in a conspiratorial scheme to deprive accused immigrants of their day in Court.

## NECESSITY OF WRIT OF HABEAS CORPUS *AD TESTIFICANDUM*

18.

While it is true that current case law provides that ordinarily a Petitioner does not have a constitutional right to be present at a hearing in a civil action to which he is a party, nevertheless, this Court may order that the Petitioner be held in local custody pending hearing in this matter because here the Petitioner is also an essential witness to the action.

19.

Pursuant to O.C.G.A. §24-10-62, this Court may issue a Writ of Habeas Corpus *Ad Testificandum* (for purpose of giving testimony) to cause the production of any witness who is imprisoned.

20.

Indeed, the Petitioner will not be able to make a showing in support of his claims without the opportunity to give live testimony to this Court.

21.

There is an especially urgent need for this Court to consider this Petition as soon as possible because the Petitioner is in the process of being deported under the 287G Program because of the very conduct which is the basis for this Complaint. Therefore, the Petitioner further urges this Court to offer a hearing date at the earliest possible date.

22.

In Poole vs. Lambert, 819 F.2d 1025 (11th Cir. 1987) the Court ruled that the decision to issue a writ of habeas corpus *ad testificandum* to permit a prisoner to be present for his own trial is a matter committed to the sound discretion of the district court. See also, Ballard v. Spradley, 557 F.2d 476, 480 (5th Cir. 1977) (citations omitted).

23.

In determining whether to issue such a writ, our precedent counsels that the district court should consider such factors as:

"whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be

stayed until the prisoner is released without prejudice to the cause asserted."
*Id.* (citation omitted).

24.

The Ballard court specifically directed, however, that a district court should not base its discretion on the probability that a prisoner will succeed on the merits of his claim, because such a factor focuses on the ultimate result of the action rather than on the need for the prisoner's testimony vis-a-vis the difficulties attendant in securing it. *Id.* at 481.

25.

As evidenced by the averments of the Petition, the Petitioner was arrested for an infraction for which he should have been merely cited. The Petitioner will give sworn witness testimony to that effect in connection with this matter. Therefore, this Court does have the authority to issue a Production Order for the Petitioner in this matter.

26.

Additionally, pursuant to O.C.G.A.§24-10-60, when a prisoner confined in any institution is needed as a witness in any civil proceeding, the judge of the court where the matter is pending shall issue an ex parte order requiring his/her delivery to the custody of the county sheriff. The costs shall be bourne by the party requesting the prisoner and the court may require a deposit to defray the

costs. However, when the requesting party is financially unable to pay the costs of

transportation, the court shall bear the costs when, after examination, the court

determines that the prisoner's presence is required by the ends of justice.

27.

In Phillips vs. Hopper, 237 Ga. 68 (1976), the Georgia Supreme Court

ruled,

> "where the judge, after examining into the matter, determines that the
> prisoner's presence is required by the ends of justice and . . . the party
> requesting it is financially unable to make said deposit, . . . expenses shall
> be taxed as costs of court." Consequently, when the habeas trial court
> received appellant's application for an order to produce these prisoners as
> witnesses at the habeas hearing, it was necessary for the court to determine
> whether appellant is financially unable to pay the expenses of having these
> prisoners produced as witnesses and whether the presence of the prisoners
> as witnesses "is required by the ends of justice." Appellant has the burden
> of satisfying the trial court that both of these conditions exist before he can
> secure an order requiring the production of the prisoners as witnesses and
> taxing the expenses thereof as costs of court. See Reed v. State, 119 Ga.
> App. 368 (5) (166 SE2d 900) (1969), and Spurlin v. State, 228 Ga. 2 (2)
> (183 SE2d 765) (1971). The trial judge must exercise a sound judicial
> discretion in determining whether the presence of the witnesses is "required
> by the ends of justice."

Here, the Petitioner, is needed as a witness in the pending Petition for Writ of

Habeas Corpus. Only the Petitioner can testify about his willingness to agree to

personal recognizance within the meaning of the statute.

28.

Additionally, the Petitioners are indigent and unable to pay the costs of

transportation as an essential witness in this action. The ends of justice would be well served by permitting his transportation.

29.

There is a strong public policy rationale for the production of a Petitioner Witness for a hearing on a Petition for Writ of Habeas Corpus which involves the Court's opportunity to observe the Petitioner in person and evaluate the meaningfulness and earnestness of his plaintive cry for relief.

30.

This is all the more significant when the action involves a complaint against the validity and voluntariness of his plea of guilty, the merits of which are apparent from the pleadings but the veracity of which cannot be determined without hearing the live testimony of the Petitioner.

31.

A telephonic hearing would fail to preserve the integrity of the proceedings because the Court would not be able to evaluate the Petitioner's non-verbal expressions over the telephone.

## PETITION FOR DECLARATORY JUDGMENT

32.

The Petitioner hereby incorporates each of the preceding numbered paragraphs by reference as if restated in full.

33.

Pursuant to O.C.G.A. §§ 9-4-1 et seq. "[i]n cases of actual controversy, the respective superior courts of this state shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

34.

This matter represents an actual controversy.  In fact, in the last few years there have been as many as five other men wrongfully arrested and deported before any trial could be set on the matter and before any pretrial motions could be filed.  In effect, those men were denied their right to be heard in any Court.

35.

As of this writing, the State Court has scheduled a hearing on the Respondent Solicitor's request for an OR bond at 9am on September 22, 2015.

36.

The Petitioners do not wish to be released on an OR bond only to face the Respondent Sheriff's 287G officers and the commencement of deportation.

37.

There is, therefore, a genuine uncertainty regarding the Petitioner's right to

trial prior to any deportation.

38.

It is essential that this Court declare for the parties the correct status of the law so that each may understand how to proceed as well as so that the offending party may have the opportunity to mitigate the damages being caused here.

PETITION FOR WRIT OF MANDAMUS

39.

The Respondent Solicitor has evidenced an intention to bring the Petitioner before the State Court of Hall County for release which will defeat judicial review of the merits of the arrest and defeat the demand for trial.

40.

The Petitioners have a right to trial. The Petitioners' rights' are not only Constitutional but also statutory.

41.

Because the Respondents have failed and refused to acknowledge the Constitutional and Statutory rights of the Petitioner, it is necessary for this Court to issue a Writ of Mandamus prohibiting the Respondents from acting to circumvent the right to trial.

WHEREFORE the Petitioner prays this Court grant this Petition for Writ of Habeas Corpus, Petition for Writ of Habeas Corpus *Ad Testificandum*, Petition for Declaratory Judgment, and Petition for Writ of Mandamus, order the Petitioners be immediately released from custody, suspend the 287G program and conduct a hearing on this matter.

This 22nd day of September 2015.

_____

Arturo Corso
Georgia State Bar No. 188748
Attorney for Petitioner
427 GREEN STREET, N.W.
GAINESVILLE, GEORGIA  30501
Telephone: (770) 532-9732
Facsimile: (770) 532-9733

EXHIBIT C

ACKNOWLEDGMENT OF SERVICE LETTER TO RESPONDENTS

# *The Corso Law Center*
## *Attorneys*
### *A Limited Liability Company*

Arturo Corso
Principal

427 Green Street, N.W.
Gainesville, Georgia 30501

Mary Beth Piggot
Of Counsel

Telephone (770) 532-9732

Facsimile (770) 532-9733

October 6, 2015

The Honorable Gerald Couch
Sheriff of Hall County
601 Main Street
Gainesville, Georgia 30501

The Honorable Stephanie Woodard
Solicitor of Hall County
225 Green Street
Gainesville, Georgia 30501

Mr. Bill Blalock
Attorney for Hall County
Post Office Box 3280
Gainesville, Georgia 30503

RE:     Nicolas Montalvan Ceballos, Jose Santos Delgado, and John Doe vs. Gerald
        Couch and Stephanie Woodard, Hall County Superior Court, Civil Action File
        No. 2015CV1915B – *Request for Acknowledgment of Service of Process*

Dear Sheriff, Solicitor, and County Attorney,

Greetings. I hope this letter finds you all well. Please find attached a copy of the Petition for
Writ of Habeas Corpus filed in the above matter.

Pursuant to O.C.G.A. §9-11-4(d), effective October 6, 2015, this letter is to request that you
execute a waive service of a summons. A defendant who waives service of summons does not
thereby waive any objection to the venue or jurisdiction of the court over the person of the
defendant. As you may know, the defendants have a duty to avoid unnecessary expenses of
service of summons upon notice of this action.

We request that you return the fully executed waiver in the postage-prepaid envelope provided
within 30 calendar days, but not more than 45 calendar days, from the date of this letter. If you
fail to do so, the court shall subsequently impose upon you any costs associated with perfecting
service unless good cause is shown.

However, if you provide the waiver as requested, you shall have 60 days from the date of this letter to prepare, file and deliver to me your answer to the petition, as opposed to the normal 30 days from date of service.

Additional copies of the petition, the waiver and this notice, as well as a reply envelope, are included for your assistance.  Thank you in advance for your kind attention to this matter.

Sincerely,

Arturo Corso
Attorney at Law

enclosures

IN THE SUPERIOR COURT OF HALL COUNTY

STATE OF GEORGIA



NICOLAS MONTALVAN CEBALLOS,
JOSE SANTOS DELGADO,
JOHN DOE, and all similarly situated
inmates of the Hall County Detention
Center,
     Petitioners,

    vs.

GERALD COUCH, in his capacity as
Sheriff of Hall County, and
STEPHANIE WOODARD, in her
capacity as Solicitor of Hall County,
     Respondents.

Civil Action File

No. 15 CV 1915 B

## RULE NISI

This Court has read and considered the Petitioners' Petition for Writ of

*Habeas Corpus, etc.* Now therefore let the same be filed. It shall be and hereby is

the ORDER of this Court that the Respondents take no action to reduce the bond

of Petitioners at this time and that the parties appear before me on the 11th day of

December 2015 at 1:00 o'clock p.m. and the Respondents shall show

cause why the prayers for relief of the Petitioners should not be granted.

This 22nd day of September 2015.

*Kathlene F. Gosselin*

The Honorable Kathlene F. Gosselin
Superior Courts
Northeastern Judicial Circuit

Prepared by:
Arturo Corso
Attorney for Petitioners

IN THE SUPERIOR COURT OF HALL COUNTY

STATE OF GEORGIA

NICOLAS MONTALVAN CEBALLOS,|
JOSE SANTOS DELGADO,            |
JOHN DOE, and all similarly situated |
inmates of the Hall County Detention |
Center,                                        |
      Petitioners,                     |
                                | Civil Action File
      vs.                                  |
                                | No.   2015CV1915B
GERALD COUCH, in his capacity as |
Sheriff of Hall County, and             |
STEPHANIE WOODARD, in her         |
capacity as Solicitor of Hall County, |
      Respondents.                    |

## WAIVER OF SUMMONS AND ACKNOWLEDGMENT OF SERVICE

Personally appeared before the undersigned officer duly authorized to take sworn statements this day came the Respondent who, under oath and under penalty of perjury, and pursuant to O.C.G.A. §9-11-4 acknowledges that he or she has received a copy of the said Petition for Writ of *Habeas Corpus*, Petition for Writ of *Habeas Corpus Ad Testificandum*, Petition for Declaratory Judgment, and Petition for Writ of Mandamus and waives service of summons and all further service of process.

This _____ day of October 2015.


_____     _____
Ms. Stephanie Woodard                    Notary Public
Respondent Solicitor of Hall County

IN THE SUPERIOR COURT OF HALL COUNTY

STATE OF GEORGIA

NICOLAS MONTALVAN CEBALLOS, |
JOSE SANTOS DELGADO,            |
JOHN DOE, and all similarly situated |
inmates of the Hall County Detention |
Center,                                   |
      Petitioners,                   |
                        |       Civil Action File
      vs.                              |
                        |       No.   2015CV1915B
GERALD COUCH, in his capacity as |
Sheriff of Hall County, and         |
STEPHANIE WOODARD, in her      |
capacity as Solicitor of Hall County, |
      Respondents.                   |

## WAIVER OF SUMMONS AND
## ACKNOWLEDGMENT OF SERVICE

      Personally appeared before the undersigned officer duly authorized to take sworn statements this day came the Respondent who, under oath and under penalty of perjury, and pursuant to O.C.G.A. §9-11-4 acknowledges that he or she has received a copy of the said Petition for Writ of *Habeas Corpus*, Petition for Writ of *Habeas Corpus Ad Testificandum*, Petition for Declaratory Judgment, and Petition for Writ of Mandamus and waives service of summons and all further service of process.

      This _____ day of October 2015.


_____         _____
Mr. Gerald Couch                                    Notary Public
Respondent Sheriff of Hall County

EXHIBIT D

DISTRICT ATTORNEY'S MOTION TO RESCIND

IN THE SUPERIOR COURT OF HALL COUNTY

STATE OF GEORGIA

NICOLAS M. CEBALLOS,               *
JOSE S. DELGADO,
et al.,                            *       CIVIL ACTION NO.
          Petitioners
                                   *       2015-CV-1915-B
v.
                                   *
GERALD COUCH, Sheriff
and                                *
STEPHANIE WOODARD, Solicitor,
          Respondents              *
                                        RULE NISI

The District Attorney's Motion to Rescind or Amend Rule Nisi having been received and

considered,

NOW, THEREFORE, let the parties appear before this Court on the 18th day of

November, 2015 at 9:30 a. m. for the petitioners to show why the relief sought therein

should not be granted.

This 21st day of October, 2015.

                                        _Kathlene F. Gosselin_

                                        Hon. Kathlene F. Gosselin
                                        Judge of Superior Court
                                        Northeastern Judicial Circuit

Presented by:

William C. Akins
Assistant District Attorney
Northeastern Judicial Circuit

FILED
HALL CO...

IN THE SUPERIOR COURT OF HALL COUNTY

2015 OCT 21   PM 12: 07

STATE OF GEORGIA

| | | |
|---|---|---|
| NICOLAS M. CEBALLOS, | * | |
| JOSE S. DELGADO, | | |
| et al., | * | CIVIL ACTION NO. |
| Petitioners | | |
| | * | 2015-CV-1915-B |
| v. | | |
| | * | |
| GERALD COUCH, Sheriff | | |
| and | * | |
| STEPHANIE WOODARD, Solicitor, | | |
| Respondents | * | |

## MOTION TO RESCIND OR AMEND RULE NISI

COMES NOW, the State of Georgia, by and through the undersigned Assistant District

Attorney, and moves this Court for an order rescinding or substantially amending that certain

Rule Nisi filed on September 22, 2015, a copy of which is attached hereto and incorporated

herein by this reference (hereinafter, the "Rule Nisi"), and, as grounds therefor, would show the

following:

1.

The criminal case against the Petitioner, JOSE SANTOS DELGADO, which underlies

the above-captioned Habeas Corpus action, has been transferred to the Office of the District

Attorney for the Northeastern Judicial Circuit for prosecution as a felony, specifically, Cruelty to

Children, First Degree, and such other charges as may be appropriate.  A copy of the Transfer of

Case to the District Attorney dated October 15, 2015 is attached hereto and incorporated herein

by this reference (hereinafter, the "Transfer").  The case has been assigned number

2015DA1351J.

1

By virtue of the Transfer, the District Attorney now stands in a similar position to the Respondent, STEPHANIE WOODARD, the Solicitor-General for Hall County prior to the Transfer. (The District Attorney and the Solicitor-General shall hereinafter be referred to collectively as the "Prosecuting Authorities.")

2.

The District Attorney's duties primarily include the prosecution of criminal matters in the Superior Courts of Hall and Dawson Counties, as set forth in O.C.G.A. § 15-18-6, including such duties and exercise of authority which necessarily appertain to that Office. O.C.G.A. §§ 15-18-6 (11). Such necessary duties include suggestion of amounts and conditions of bonds for individuals charged with criminal offenses pursuant to O.C.G.A. § 17-6-1, et seq. This would include recognizance bonds under O.C.G.A. § 17-6-12(c).

3.

The Rule Nisi states, in pertinent part, that "[i]t shall be and is hereby the ORDER of this Court that the Respondents take no action to reduce the bond of the Petitioners at this time.." and goes on to set a hearing date for December 11, 2015, approximately 75 days after the Rule Nisi was filed.

As a result of the Transfer, the District Attorney now stands in the same position as the Respondent, Woodard, as to the Petitioner, Delgado.

3.

The prohibition noted above is, in substance and effect, an injunction and/or restraining order against the Prosecuting Authorities of Hall County prohibiting the exercise of their statutory duties and powers without any prior notice or *attempted* notice to them, as mandated by O.C.G.A. § 9-11-65(b), let alone a hearing on the merits. Nor does the Rule Nisi contain the

2

automatic 30 day termination required by O.C.G.A. § 9-11-65 (b)(2) or any evidence of consent

to an extension by either prosecutor or the Respondent, Sheriff Gerald Couch.

No petition, motion or other pleading for injunctive relief has been filed in the above-

captioned civil matter or, to the knowledge of the undersigned, any other action, nor has any

such pleading been served upon either Prosecuting Authority.

Ex parte injunctive relief without compliance with O.C.G.A. § 9-11-65(b), as found in the

Rule Nisi, is absolutely prohibited. *Paine v. Lowndes Co. Bd. of Tax Assessors*, 124 Ga. App.

233 (1971), overruled on other grounds, 233 Ga. 734.

NOW, THEREFORE, the District Attorney requests that this Court

1. Rescind and delete the language in the Rule Nisi described in Paragraph 2, above,

2. Set a hearing on this motion at the Court's earliest convenience, and

3. Provide such additional relief as the Court may deem appropriate.

Respectfully submitted, this 21 ST day of October, 2015.

_____
William C. Akins
Assistant District Attorney
Northeastern Judicial Circuit
Georgia Bar No. 006460

225 Green St.
Gainesville, GA 30503
(770) 531-6965
wakins@hallcounty.org

IN THE SUPERIOR COURT OF HALL COUNTY

STATE OF GEORGIA



NICOLAS MONTALVAN CEBALLOS,|
JOSE SANTOS DELGADO, |
JOHN DOE, and all similarly situated |
inmates of the Hall County Detention |
Center, |
      Petitioners, |
|
vs. |
|
GERALD COUCH, in his capacity as |
Sheriff of Hall County, and |
STEPHANIE WOODARD, in her |
capacity as Solicitor of Hall County, |
      Respondents. |

Civil Action File

No. 15CV1915·B

## RULE NISI

This Court has read and considered the Petitioners' Petition for Writ of

*Habeas Corpus, etc.* Now therefore let the same be filed. It shall be and hereby is

the ORDER of this Court that the Respondents take no action to reduce the bond

of Petitioners at this time and that the parties appear before me on the 11th day of

December 2015 at 1:00 o'clock p.m. and the Respondents shall show

cause why the prayers for relief of the Petitioners should not be granted.

This 22nd day of September 2015.

_____

The Honorable Kathlene F. Gosselin
Superior Courts
Northeastern Judicial Circuit

Prepared by:
Arturo Corso
Attorney for Petitioners

IN THE STATE COURT OF HALL COUNTY

STATE OF GEORGIA

STATE OF GEORGIA

V.

JOSE DELGADO

CASE NO.: UN-NUMBERED

CHARGES: SIMPLE BATTERY
FVA

## TRANSFER OF CASE TO THE DISTRICT ATTORNEY

The Solicitor-General of Hall County hereby transfers this case to the District attorney of

the Northeastern Judicial Circuit for further prosecution for the following reasons:

Although the initial above charge was related to another victim it is clear that during this

incident the defendant also struck a minor child.  Upon reviewing the medical records the

injuries sustained by the minor child at the time of this incident support a felony cruelty charge.

At the request of Assistant District Attorney Kelley Robertson it is hereby transferred to the

District Attorney's Office.

This _15_ day of _October_ , 2015

Stephanie D. Woodard
Solicitor-General
State Court of Hall County

Recommended by:

Amber Redford Sowers
Chief Assistant Solicitor
State Court of Hall County

IN THE SUPERIOR COURT OF HALL COUNTY

STATE OF GEORGIA

NICOLAS M. CEBALLOS, et al.          *

v.                                   *          CASE NOS. 15 CV 1915 B

STEPHANIE WOODARD, et al.,           *

CERTIFICATE OF SERVICE

I, William C. Akins, Assistant District Attorney for the Northeastern Judicial

Circuit, hereby certify that I have served a copy of the foregoing Motion to Rescind or

Modify Rule Nisi upon opposing counsel, by placing a copy of the same in the U.S. Mail,

with adequate postage thereon, addressed as follows:

> Arturo Corso, Esq.
> 427 Green St.
> Gainesville, GA 30501

This 21st day of October, 2015.

William C. Akins
Assistant District Attorney
Northeastern Judicial Circuit

P.O. Box 1690
Gainesville, GA 30503
(770) 531-6965
wakins@hallcounty.org

EXHIBIT E

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

NICOLAS MONTALVAN CEBALLOS, |
JOSE SANTOS DELGADO, |
JOHN DOE, and all similarly situated |
inmates of the Hall County Detention |
Center, |
      Petitioners, |

    vs. |

GERALD COUCH, in his capacity as |
Sheriff of Hall County, and |
STEPHANIE WOODARD, in her |
capacity as Solicitor of Hall County, |
      Respondents. |

Civil Action File

No.   2:15CV00247-RWS-JCF

## PETITIONERS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO REMAND

COME NOW the Plaintiffs in the above styled matter, MR. NICOLAS

MONTALVAN CEBALLOS, MR. JOSE SANTOS DELGADO, JOHN DOE and

all similarly situated inmates of the Hall County Detention Center, by and through

undersigned counsel, and hereby file this their Memorandum of Law in Support of

Motion to Remand to the Superior Court of Hall County, Georgia and,

incorporating all of the averments contained in the Motion to Remand and the

exhibits attached thereto, further show this Court as follows:

I.

## INTRODUCTION

Respondents' removal is improper in this case because the maneuver is untimely and there is no federal question subject matter jurisdiction. Therefore, this matter should be remanded to the Hall County Superior Court.

II.

## FACTUAL BACKGROUND

Respondent Sheriff is the entity in control of the Hall County Detention Center. As part of its operations, Respondent Sheriff has entered into a Memorandum of Agreement with the Immigration and Customs Enforcement (ICE) agency, a division of the U.S. Department of Justice. The purpose of the agreement is purportedly to identify people who are not citizens of the U.S. and who have been convicted of offenses which make them removable from the U.S. or are removable for some other legal reason. The agreement is referred to as the "287g Program."

This program is completely voluntary. Respondent Sheriff need not participate. Even when participating, Respondent Sheriff enjoys autonomy and discretion to determine who among the people who find themselves in the jail, will be screened for immigration detainer purposes. Even when identifying a person

who is removable, Respondent Sheriff has the authority to release the person from any immigration detainer.  Respondent Sheriff, and only Respondent Sheriff, may exercise this authority or discretion.

### III.

### CONTROVERSY

On or about September 15, 2015, Respondent Solicitor evidenced an intent to reduce the criminal bond amounts on Plaintiffs' cases from the scheduled bond amounts to ZERO DOLLARS ($0.00, no money required).  It is most unusual for a criminal prosecutor to make a motion to reduce the bond of a criminal defendant, particularly when the case involves allegations of family violence, as here.

The practical effect of this prosecution maneuver was to deliver the Plaintiffs into the waiting arms of the 287g Officers in the employ of Respondent Sheriff.  The arresting officers in each of the Plaintiff's cases were also in the employ of the Respondent Sheriff.

Simultaneously, Respondent Solicitor failed and refused to formally accuse the Plaintiffs in such a manner as would authorize them to file a Demand for Speedy Trial – that is to say, the Respondent Solicitor received the criminal charges brought by the Respondent Sheriff and refused to commence the prosecution, preferring instead to circumvent judicial review of the police charges

and conduct in order to permit the Respondent Sheriff to remove the Plaintiffs from the jurisdiction of the courts.

The implementation of the 287g program and the utilization of this peculiar procedural "dead zone" makes the case and controversy to be considered because a state actor can effectuate a false arrest or an arrest without probable cause and then forcibly remove the accused from the jurisdiction so that no judicial officer will ever review the propriety or impropriety of the charge.  Judicial review of police action and the right of access to courts by every innocent-accused person are the bedrock principles of our U.S. and Georgia Constitutions.

## IV.

## LEGAL ANALYSIS

A time-honored principle of federal jurisdiction is that the plaintiff, as the party claiming injury and bearing the ultimate burden of proof, is entitled to significant deference in controlling the forum of litigation.  Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) (discussing plaintiff's right to choose the forum of litigation); *see* Burns, 31 F.3d at 1095 ("While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim. Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing .... " (internal citations omitted)); Doe v.

Allied-Signal Inc., 985 F.2d 908, 911 (7th Cir. 1993) ("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.").

The deference accorded to the plaintiff as "the master of his complaint" counsels strongly against removal and is one reason why a removing defendant seeking to override the plaintiffs jurisdictional wishes bears a burden that courts often describe as "heavy," "significant," or "difficult" to bear. *See, e.g.*, Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) ("heavy burden" standard); Poulos v. Naas Foods, Inc., 959 F.2d 69, 72 (7th Cir. 1992) ("difficult" burden standard); Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1147 (D.N.M. 1999) ("significant" burden standard).

Plaintiffs alleging state law claims may defeat removal under federal question grounds unless some of their claims have been preempted by federal law. 28 U.S.C. § 1331 (2000) (federal question jurisdiction). Alternatively, plaintiffs may defeat removal under diversity grounds by: (1) joining one or more resident defendants against whom there is a possibility of establishing a valid cause of action; or (2) limiting their request for damages or failing to seek damages in excess of the jurisdictional minimum. 28 U.S.C. § 1332 (2000) (diversity jurisdiction).

In addition, because it is inevitable that frictions and inconsistencies will result when federal courts adjudicate claims arising under the law of an independent sovereign state, basic principles of equity, comity, and federalism dictate that all doubts and uncertainties about jurisdiction must be resolved in favor of remand. *See, e.g.*, Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001); In re Business Men's Assurance Co., 992 F.2d 181, 183 (8th Cir. 1993).

## A.

### REMOVAL

A party may remove an action from state to federal court; however, "[f]ederal courts are courts of limited jurisdiction." Russell Corp. v. American Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001); *see also* Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994). Consequently, federal courts are empowered to hear only those cases that the Constitution or the Congress of the United States has authorized the federal courts to hear. *See* Kokkonen, 511 U.S. at 377.

Specifically, federal courts are empowered to hear those cases in which exclusive federal question jurisdiction lies, or alternatively where there is a

complete diversity among the parties and the amount in controversy exceeds $75,000. Generally speaking, 28 U.S.C. §§ 1441 through 1452, govern the procedure for removal. "Removal is a statutory privilege, rather than a right, and the removing party must comply with the procedural requirements mandated in the statute when desirous of availing the privilege." Adams v. Charter Communications VII, LLC, 356 F. Supp. 2d 1268, 1271 (M.D. 2005); *see also* Landman v. Borough of Bristol, 896 F. Supp. 406, 409 (E.D. Pa. 1995)("Because courts strictly construe the removal statutes, the parties must meticulously comply with the requirements of the statute to avoid remand.")

"After a case has been removed from state to federal court, the non-removing party may move for remand . . . . on the grounds that the removing party has failed to comply with the statutory requirements for removal." Id. Section 1447(c) of Title 28 of the United States Code authorizes remand if a "procedural defect in the removal of the case" exists. Russell Corp. v. American Home Assurance Co., 264 F.3d 1040, 1043 (11th Cir. 2001).

Due to the limitations on federal court jurisdiction, "the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear." Beard v. Lehman Brothers Holdings, Inc., 458 F. Supp. 2d 1314, 1317 (M.D. Ala. 2006); *see also* Russell Corp., 264 F.3d at 1050 ("[T]here is a presumption against

the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.")

With these limitations on jurisdiction, the necessity of strict compliance with the statute, and the fact that parties rarely – if ever – get a "second bite at the apple", it is vital for a removing party to be aware of the most common defects and grounds for remand. The remainder of this article touches on the law relating to the most common grounds for remand in removals based on diversity jurisdiction.

B.

TIMELINESS

To avoid remand, at a minimum, a removing party must file a notice of removal in a timely manner, which is within thirty (30) days after receipt of a document from which the defendant could first ascertain that the case is or has become removable.

The removing defendant "has the task of proving to the court that the removal was timely." Crews v. National Boat Owners Ass'n, 2006 WL 902269, *1 (M.D. Ala. April 6, 2006)(concluding removal was untimely because any of the defendants could have intelligently ascertained from a review of the initial pleading that the case was removable and thus could not rely on the date of receipt of "other paper" from which to start the clock).

Certain courts have not hesitated to remand cases to state court if a defendant fails to meet this burden. *See, e.g., id.; see also* Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1321 (11th Cir. 2001); Arnold, et al. v. Guideone Specialty Mut. Ins. Co., 142 F. Supp. 2d 1319, 1323 (N.D. Ala. 2001).

To guard against remand, a removing party should file a notice of removal within thirty (30) days of receipt of a document, "other paper" or information that leads the removing party to believe that the case is or has become removable. With respect to service of the summons and complaint, the thirty day time period for removal begins to run from the date of formal service that complies with the rules of the state governing service of the summons and complaint. Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999)(holding that thirty-day removal period runs from the date of formal service as opposed to the date on which the defendants received the complaint through informal means). Of course, this rule relating to formal service is inapplicable in the context of "other paper" removals.

Specifically, compliance with 28 U.S.C. § 1446 mandates that - if a defendant elects to proceed in federal court - that defendant remove the case within a specified time period "after receipt [of a document or evidence] by the defendant, through service or otherwise . . . from which the defendant first

ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446.

"Regardless of the type of case, a defendant must remove within thirty days of receiving the document that provides the basis for removal." *Id.* at 1213.

"Where a plaintiff timely alleges and proves that a defendant has not timely filed a removal petition in accordance with statutory procedures, the district court, as a court of limited jurisdiction, cannot disregard an evident procedural defect regardless of the triviality or inadvertent nature of the defect." Beard, 458 F. Supp. 2d at 1318 (*citing and quoting* Kisor v. Collins, 338 F. Supp. 2d 1279, 1281 (N.D. Ala. 2004); Prod. Stamping Corp. v. Md. Cas. Co., 829 F. Supp. 1074, 1077-78 (E.D. Wis. 1993)("The view that technical flaws in a removal petition 'can be swept away like so much dust seriously misunderstands the conditions under which the formidable power of the federal judiciary can-and should-be invoked")(omitting citations))(emphasis added).

Consequently, remand may result if a defendant fails to remove the case within the statutorily imposed thirty-day deadline. Crews, 2006 WL 902269 at *1 (concluding removal was untimely because any of the defendants could have intelligently ascertained from a review of the initial pleading that the case was removable and thus could not rely on the date of receipt of "other paper" from

which to start the clock).

Here, the Respondents failed to seek removal of the case within 30 days. Respondent Solicitor had actual notice of the Suit on September 22, 2015. Respondent Sheriff had actual notice of the Suit on or about October 6, 2015. Counsel of record for the Respondents also had actual notice on or about October 6, 2015.

Here, Respondents' counsel demonstrated Respondents' actual knowledge by corresponding by email with a representative of the District Attorney on October 21, 2015 and filing a motion to rescind rule nisi. Respondents' counsel later attended the hearing on said motion in person on November 18, 2015.

Still, Respondents failed to file for removal until December 11, 2015. Therefore, this Court reject the notice of removal and remand to the Hall County Superior Court.

C.

Federal Question Jurisdiction

"Only state-court actions that *originally* could have been filed in federal court may be removed to federal court by the defendant." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (emphasis added) (affirming remand to state court). Neither "a federal defense to a state law

Page 11 of 19

claim," *see* <u>Louisville & Nashville R.R. v. Mottley</u>, 211 U.S. 149, 152, 29 S.Ct.

42, 53 L.Ed. 126 (1908), nor a counterclaim can serve as the basis for "arising

under" jurisdiction. <u>Holmes Group, Inc. v. Vornado Air Circulation Sys, Inc.</u>, 535

U.S. 826, 122 S.Ct. 1889 (2002); <u>Lontz</u>, 413 F.3d at 439 (*quoting* <u>Gully v. First</u>

<u>Nat'l Bank</u>, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ("Thus, the

Supreme Court unwaveringly has maintained that '[t]o bring a case within [§

1441], a right or immunity created by the Constitution or laws of the United States

must be an element, and an essential one, of the plaintiff's cause of action.' "));

<u>King</u>, 337 F.3d at 424.

Here, where there is no "diversity of citizenship, federal-question

jurisdiction is required." <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 107 S.Ct.

2425, 96 L.Ed.2d 318 (1987) (emphasis added) (affirming remand to state court).

The burden of establishing federal question jurisdiction lies with the removing

party, and the removal statute must be strictly construed against removal. Removal

is not appropriate and remand is required where a plaintiff's well-pleaded

complaint relies solely on state law, and the resolution of a substantial federal

question is not required. <u>Franchise Tax Bd.</u>, 463 U.S. 1 (when the law that creates

the cause of action is state law and original federal jurisdiction is unavailable

because the lack of a substantial federal question, remand to state court required)

### *Burden on Removing Party and Statute Construed In Favor of Remand*

The burden of establishing federal jurisdiction is upon the party seeking removal. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). If there are doubts as to the court's jurisdiction, remand of the case is required pursuant to 28 U.S.C. § 1447(c). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).

### *The Well-pleaded Complaint Rule*

Whether federal question jurisdiction exists is determined by the well-pleaded complaint rule "which provides that federal jurisdiction exists only when a federal question is presented on the *face* of the *plaintiff's* properly pleaded complaint." Caterpillar, 482 U.S. at 392 (emphasis added); *see also* Vaden v. Discover Bank, 556 U.S. 49, 129 S.Ct. 1262, 1272, 173 L.Ed.2d 206 (2009). "This rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc., 482 U.S. at 392.

"A cause cannot be removed from a state court simply because, in the progress of the litigation, it may become necessary to give a construction to the

constitution or laws of the United States." State of Tennessee v. Union & Planters' Bank, 152 U.S. 454, 460, 14 S. Ct. 654, 656, 38 L. Ed. 511 (1894) (*quoting* Little York Gold Washing & Water Co. v. Keyes, 96 U.S. 199, 203, 24 L. Ed. 656 (1877)). The plaintiff's complaint is "to be ascertained by the legal construction of its own allegations, and not by the effect attributed to those allegations by the adverse party." Union & Planters' Bank, 152 U.S. at 460 (*quoting* Cent. R. Co. of New Jersey v. Mills, 113 U.S. 249, 257, 5 S. Ct. 456, 459, 28 L. Ed. 949 (1885)).

Significantly, the removing party cannot manufacture federal question jurisdiction by alleging federal defenses or counterclaims.

> "[T]he presence of a federal question ... in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule – that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court ..."

Caterpillar, 482 U.S. at 398-99; Oklahoma Tax Comm'n v. Graham, 489 U.S. 838, 840-41, 109 Ct. 1519, 1521, 103 L. Ed. 2d 924 (1989) ("[W]hether a case is one arising under [federal law], in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.").

Page 14 of 19

Likewise, in Holmes Group, Inc. v. Vornado Air Circulation Sys, Inc., 535 U.S. 826, 122 S.Ct. 1889 (2002), the Supreme Court confirmed that a defendant may not make a case removable by asserting a federal counterclaim: "we decline to transform the longstanding well-pleaded-complaint rule into the 'well-pleaded-complaint-or-counterclaim rule.'" Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 832, 122 S.Ct. 1889, 1894 (2002).

"[T]he controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." Gully v. First Nat. Bank, 299 U.S. 109, 112-13, 57 S. Ct. 96, 97-98, 81 L. Ed. 70 (1936) (*citing* Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 16; Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218). "Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense." Gully, 299 U.S. at 113 (*citing* Devine v. Los Angeles, 202 U.S. 313, 334, 26 S.Ct. 652, 50 L.Ed. 1046; Kohler Die & Specialty Co.,228 U.S. 22). Otherwise, a defendant, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising

under federal law, thereby selecting the forum in which the claim shall be litigated.

If a defendant could do so, the plaintiff would be master of nothing.   Congress has

long since decided that federal defenses do not provide a basis for removal.

Caterpillar, 482 U.S. at 398-99.

The court cannot imply or anticipate potential defenses by the Respondents

in applying the well-pled complaint rule. Oklahoma Tax Comm'n v. Graham, 489

U.S. 838, 839-41, 109 S. Ct. 1519, 1520, 103 L. Ed. 2d 924 (1989) (Reversing the

Tenth Circuit Court of Appeals twice and ordering the case remanded when "there

was no independent basis for original federal jurisdiction to support removal" after

the court of appeals "majority concluded that removal had been proper because the

State's complaint, although facially based on state law, contained the 'implicit

federal question' of tribal immunity."); Pinney v. Nokia, Inc., 402 F.3d 430, 445-

46 (4th Cir. 2005) (Remanding case to state court since "[t]he district court went

beyond this restricted inquiry and in effect anticipated (1) that [defendant] would

raise the affirmative defense that the state law claims are preempted ... and (2) that

the ... plaintiffs would be called upon to rebut that defense. The cases could be

decided, the court concluded, only by resolving whether the claims are preempted

by [federal law or standards]. Even if that is so, a preemption defense 'that raises

a federal question is inadequate to confer federal jurisdiction.'" Merrell Dow

Pharms., Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650

(1986)). Further, even "[t]he fact that a defendant might ultimately prove that a

plaintiff's claims are pre-empted ... does *not* establish that they are removable to

federal court." Lontz, 413 F.3d at 443 (*quoting* Caterpillar, 482 U.S. at 398)

(emphasis added). "Again, 'a case may not be removed to federal court on the

basis of a federal defense, including the defense of preemption,' even if the

complaint begs the assertion of the defense, and even if 'the defense is the only

question truly at issue in the case.' " Pinney, 402 F.3d at 446 (*quoting* Franchise

Tax Bd., 463 U.S. at 14).

Pursuant to the well-pleaded complaint rule, this case must be remanded to

the Hall County Superior Court.  In their Notice of Removal, Defendants claim

that "this matter raises federal questions."   However, this court may only rely on

the claims pleaded in the Complaint, which are state law claims.. Therefore, to the

extent Defendants rely on their defenses and counterclaims in support removal or

unplead inferences on federal issues, this case must be remanded.

V.

CONCLUSION

Simply put, there is a low tolerance for removal maneuvers that do not

strictly comply with the removal statutes or that contain only conclusory

allegations in support of the removing party's claim that federal jurisdiction exists.

Remand is appropriate here because the removal notice was untimely and there is

no federal question jurisdiction.  This Court need not conclude it has exclusive,

original jurisdiction simply because the Suit references a federal program.  The

balance of the facts and the equities show that removal is improper and the

Petitioners should remain in control of their litigation of these state law claims.

WHEREFORE the Petitioners pray this Court grant this Motion to Remand

and reject the Respondents' notice of removal.

This 7th day of January 2016.


*/s/ Arturo Corso*

Arturo Corso
Georgia State Bar No. 188748
Attorney for Petitioners
*The Corso Law Center, LLC*
427 Green Street, N.W.
Gainesville, Georgia  30501
Telephone: (770) 532-9732
Facsimile: (770) 532-9733

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was formatted in Times New

Roman 14 pt., in accordance with Local Rule 5.1C, and I have this day

electronically filed the preceding Motion to Remand with the Clerk of the Court

using the CM/ECF system which will automatically send e-mail notification of such filing to the attorney(s) of record in the case, including opposing counsel.

Counsel of Record are:

> Brian R. Dempsey
> Freeman Mathis & Gary, LLP
> 100 Galleria Parkway
> Suite 1600
> Atlanta, GA 30339-5948
>
> Theodore Freeman
> Freeman Mathis & Gary
> 100 Galleria Parkway
> Suite 1600
> Atlanta, GA 30339-5948
>
> Wesley Calvin Jackson
> Freeman Mathis & Gary, LLP
> 100 Galleria Parkway
> Suite 1600
> Atlanta, GA 30339-5948
>
> William H. Blalock
> Stewart Melvin & Frost
> 6th Floor Hunt Tower
> P.O. Box 3280
> 200 Main Street
> Gainesville, GA 30501

This 7th day of January 2016.


_____/s/ Arturo Corso_____
Arturo Corso
Attorney at Law